UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ELENA SHAWBACK, | |
| Plaintiff, | 3:11-cv-00243 JWS |
| vs. | ORDER AND OPINION |
| WELLS FARGO BANK, N.A., | [Re: Motion at docket 54] |
| Defendant. | |

## I. MOTION PRESENTED

At docket 54 defendant Wells Fargo Bank, N.A. ("Wells") presents a motion requesting relief relating to the alleged destruction of evidence by plaintiff Elena Shawback ("Shawback") and for the imposition of sanctions. Shawback's response is at docket 67, and Wells' reply is at docket 69. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

The factual and procedural background of this employment discrimination lawsuit is set out in the court's order at docket 39. Readers unfamiliar with it may wish to read that order. Additional background pertinent to the pending motion is in the next section.

## III. DISCUSSION

Central to the motion at docket 54 is Wells' affirmative defense that after Shawback's employment ended at Wells, she failed to mitigate her damages.[1] Wells contends that Shawback's destruction of evidence has significantly impeded its ability to present that defense. More specifically, in the motion at docket 54, Wells asks the court for the following relief based on Shawback's alleged spoliation of evidence:

> (a) Shawback be prohibited from testifying at trial as to any alleged efforts to seek employment for which she has failed to provide documented proof; (b) the jury be instructed that it may infer that Shawback destroyed evidence that she received employment offers; and (c) the court impose a rebuttable presumption that Shawback failed to mitigate her alleged damages.[2]

Alternatively, Wells asks that if Shawback is permitted to testify about employment efforts beyond the ones for which she has supplied documentary support, then she should be ordered to provide a complete response to Wells' Interrogatory 13 and submit to a further deposition.[3]

The time period relevant to the spoliation claim would appear to be from June 12, 2009, Shawback's last day of work at Wells, through December 31, 2011, a date after which Shawback's self-employment as a consultant has provided an income in excess of any she would have earned at Wells.[4] However, Shawback has admitted that she

---

[1] Doc. 7 at p. 4.

[2] Doc. 54 at pp. 1-2.

[3] *Id.* at pp. 17-18.

[4] Shawback has explicitly represented that she seeks no damages for any time period after December 31, 2013. Doc. 67 at p. 6. The court relies on that representation which will be binding at trial.

made no effort to find employment prior to October of 2009,[5] thus shortening the relevant time frame for purposes of the pending motion by about 3.5 months.

A district court may impose sanctions relating to the destruction of evidence pursuant to Rule 37 of the Federal Rules of Civil Procedure or pursuant to its inherent powers.[6]  Where, as here, no contention is made that the destruction of evidence violated a court order, imposition of sanctions depends on the court's inherent powers.[7]

The Third Circuit's discussion in *Bull v. United Parcel Service, Inc.*[8] is helpful in framing the proper analysis.  The *Bull* court explained that there are different considerations with respect to whether spoliation occurred and with respect to imposition of sanctions for any spoliation that did occur.  Spoliation exists where (1) the evidence in question was in the control of one party, (2) the evidence is relevant to a claim or defense, (3) the evidence has been destroyed, and (4) "the duty to preserve the evidence was reasonably foreseeable to the party."[9]  If there has been spoliation, then the district court must go on to consider a variety of factors in determining what sanction might be appropriate.  The factors include: (1) the spoiler's degree of fault, (2) the prejudice to the other party, (3) what sanction will avoid unfairness to the party harmed

---

[5]Interrogatory Answer stating, "I did not seek employment from June 12, 2009, through September 2009.  Doc. 55-2 at p. 6.

[6]*Leon v. IDX Sys.* Corp., 464 F.3d 951, 958 (9th Cir. 2006)

[7]*Id.*

[8]665 F.3d 68 (3rd Cir. 2012).

[9]*Bull*, 65 F.3d at 73.

by destruction of the evidence, and (4) if the fault is serious, what sanction will deter others from engaging in such conduct.[10]

The evidence Wells complains was destroyed consists of letters, applications and email reflecting communications Shawback had concerning the large number of inquiries she says she made seeking employment after she left Wells. There is no doubt that at least some of the relevant documents were in Shawback's control, that they would be relevant to Wells' mitigation defense, and that at least some of the documents have been destroyed. When it should have been evident to Shawback that she should have preserved the documents is another issue.

This lawsuit was not filed until June 10, 2011, but the duty to preserve evidence may arise before a lawsuit is filed. As this court wrote several years ago: "[The] duty to preserve material evidence arises . . . during that period before the litigation commences when a party reasonably should know that the evidence may be relevant to anticipated litigation."[11] Just when Shawback should have known that various documents might be relevant to anticipated litigation is disputed. Shawback contends that she did not actually contemplate filing a lawsuit against Wells until shortly before she filed her complaint. Her assertion is supported by her affidavit[12] which is consistent with her deposition testimony as quoted in her response.[13] Shawback's complaint is dated June 10, 2011, and it is reasonable to assume that her lawyer would not have

---

[10]*Id.,* 665 F.3d at 73-74 n.5.

[11]*Lewis v. Donley*, 2009 WL 2176123, at *7 (D. Alaska July 22, 2009) (citation omitted).

[12]Doc. 67-5 ¶¶ 15 and 16 at p. 4.

[13]Doc. 67 at p. 2.

filed it, with less than two weeks to confer with Shawback, do factual and legal research, and draft the complaint. The court therefore concludes that the earliest date on which Shawback might reasonably have foreseen that the documents relating to prospective employment should not have been destroyed was late May, 2011.[14] Accordingly, she may testify about actions taken prior to that date even if some relevant documents were destroyed, except as discussed further below.

Seeking to avoid responsibility for destroying such documents until much later, Shawback argues that as a lay person she could not foresee the need to preserve materials relating to her efforts to find employment until the time when Wells filed discovery requests seeking various items, including things that would have been in the Documentation. On a general level this is entirely implausible. Shawback was an educated person with substantial experience as a bank manager. By late May of 2011 or thereabout she had discussed suing Wells with her former colleague Andres, and she had retained a lawyer recognized by this court as a knowledgeable and competent litigator.

The court concludes that there was spoliation of evidence during the period after late May of 2011. That conclusion leads to an inquiry about sanctions for the spoliation. According to her interrogatory answers, Shawback applied for at least one-hundred jobs after termination at Wells. However, according to her deposition testimony, the number of jobs might have been 250. The record does not disclose how many applications were made in any particular time period. Shawback's affidavit explains that some of her

---

[14]This finding does bear on when Shawback's cause of action accrued. That issue involves a different set of considerations.

efforts were made electronically through on-line services Monster.com and Careerbuilder.com, which provide electronic on-line job search opportunities.

Use of such on-line services may not always result in the creation of documents that the job seeker would likely think to preserve even if the job seeker were suing a former employer. Shawback's lawyer describes the process as follows:

> [Job search engines] are the modern equivalent of the classified ads in the newspapers (which hardly carry any classified ads anymore). As [Shawback] explains they send her periodic emails of job openings, depending on her preferences that she put into the search engine when she signed up for it. She then clicks on a link on jobs she wants to apply for and the search engine either directs her to the prospective employer's website or sends them her resume. There are no emails in this process from Shawback to the search engine of the employer, its all done with links. If [the search engine website] directs her to the employer's website there is normally an electronic form application which she fills out, which may or may not request a resume and cover letter. So this process leaves no trail of emails back and forth discussing Shawback applying for a job. [There are] only the emails listing the job opportunities. These would not show whether Shawback applied for same or not. Her deleting them is the equivalent of throwing the newspaper classified ads away. The search engine spins out a new set of job opportunities every so often. There is no reason to keep the old set and so Shawback did not until she knew the Defendant wanted copies of same, by way of a discovery request in June 2012.[15]

In its reply Wells does not challenge this description of how the on-line services work. With respect to Shawback's use of the on-line job services, the court concludes that the imposition of the sanctions requested by Wells would be inappropriate for several reasons. First, the degree of Shawback's fault respecting the on-line services is not large, although the failure to keep some contemporaneous record of how many jobs for which she applied is much more troublesome in light of the very large and inconsistent

---

[15]Doc. 67 at pp. 5-6.

numbers she has given in discovery.  Second, allowing Shawback to testify that she signed up for the on-line services, periodically reviewed lists of available jobs and sometimes clicked on links that produced no response from the prospective employer is not seriously prejudicial to Wells.  On the other hand, because there is clearly no reliable record of how many jobs she sought, it would be quite prejudicial to Wells if she could testify that it was 100 or 250.  Third, even with respect to the gross number of jobs for which Shawback might have applied, the sanctions Wells seeks are out of proportion to Shawback's conduct.  Lesser sanctions will better address the muddled factual situation reflected in the motion papers.  First, Shawback will not be permitted to testify that she sent a resume, cover letter or the like to a prospective employer identified by the on-line service unless she preserved and provided Wells a copy of documentation showing she did so.  Second, Shawback will not be permitted to testify that she applied for one-hundred or more jobs.  In other words, on direct examination she may not offer an estimate of the number of applications she made.  With respect to the number of applications, Shawback may testify only that she looked at openings periodically listed by on-line service providers and sometimes pursued them by clicking on links provided by the service provider and that she sent out the applications noted in the next two paragraphs.

      Shawback has provided Wells with copies of letters she wrote to several prospective employers as follows: Letter to AT&T dated September 4, 2009; letter to CD1 dated November 17, 2009; letter to Crowley Maritime Corporation dated April 5, 2011, and letter to Ocean Beauty Seafoods dated January 11, 2012.  There is no

indication that Shawback destroyed other documents relating to these applications, so she may testify about them.

Shawback provided Wells with copies of documents from Monster.com showing that she applied for several jobs as follows: project manager at the Alaska Energy Authority before January 20, 2012; office manager for Naknek, Alaska on January 11, 2012; contract construction manager and also contract administrator at CDI on June 23, 2011; acquisition specialist IV at Teesada & Associates, Inc. on May 4, 2011; and BSA/AML Manager at Alaska USA Federal Credit union on April 5, 2011. There is no indication that Shawback destroyed other documents relating to these applications, so she may testify about them.

Having found spoliation and considered the factors identified in the *Bull* decision pertinent to the sanctions which may be imposed for that spoliation, the court concludes that the restrictions on Shawback's testimony set out in this order better reflect the scope of sanctions appropriate here than those requested by Wells. Because the restrictions established by this order are sufficient, the court declines to consider the alternative remedy suggested by Wells.

## IV.  CONCLUSION

For the reasons above, the motion at docket 54 is **GRANTED** in part and **DENIED** in part as follows:

(1) Shawback may not testify that she sent a resume, cover letter or the like to a specific prospective employer identified by an on-line service unless prior to the date of

this order she provided Wells a copy of documentation, such as a copy of an application letter or Monster.com confirmation showing she did so;

(2) Shawback may not testify that she applied for one-hundred or more jobs, nor may she offer any estimate of how many jobs she applied for during any period of time on direct examination (if questioned about the number on cross-examination she may respond);

(3) Shawback may testify that she made use of on-line job search services, the identity of those services, the period of time when she used those services, that she looked at the lists of available jobs periodically provided by the on-line services, and pursued some (without estimating the number) of them on-line.

(4) Shawback may testify about the job applications reflected in the following letters:

(a) letter to AT&T dated September 4, 2009;

(b) letter to CD1 dated November 17, 2009;

(c) letter to Crowley Maritime Corporation dated April 5, 2011;

(d) letter to Ocean Beauty Seafoods dated January 11, 2012;

(5) Shawback may testify about the job applications reflected in the following Monster.com confirmations:

(a) project manager at the Alaska Energy Authority;

(b) office manager for Naknek, Alaska;

(c) contract construction manager and also contract administrator at CDI;

(d) acquisition specialist IV at Teesada & Associates, Inc.; and

(e) BSA/AML Manager at Alaska USA Federal Credit Union.

DATED this 1st day of July 2013.

                                                        /s/ JOHN W. SEDWICK  
                                           UNITED STATES DISTRICT JUDGE